UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

CHRISTOPHER NEDEAU and VICTOR
SMITH,

    Plaintiffs,

   v.

MARI KATHARINE ARMSTRONG and
BRYAN A. ARMSTRONG, wife and
husband; and ADVENTURE
CYCLING ASSOCIATION, a
nonprofit organization,

    Defendants.

NO. CV-09-0189-EFS

**ORDER ENTERING RULINGS FROM
JANUARY 21, 2011 HEARING**

  A hearing occurred in the above-captioned matter on January 21, 2011, in Spokane, Washington.  Richard C. Eyman and Cynthia McGuinn appeared on Plaintiffs Christopher Nedeau and Victor Smith's behalf. Edward G. Johnson appeared on behalf of Defendant Adventure Cycling Association (ACA); John P. Bowman appeared on the Armstrong Defendants' behalf.  Before the Court were ACA's Motion for Summary Judgment (ECF No. 46), Defendants' Joint Motion to Exclude Testimony of Richard Shaw, M.D. (ECF No. 57), Defendant Armstrong's Motion to Exclude Video Animation Evidence (ECF No. 61), and Plaintiffs' Motion to Continue Trial Date (ECF No. 102).  After reviewing the submitted materials and relevant authority

ORDER ~ 1

and hearing from counsel, the Court was fully informed.  This Order
memorializes and supplements the Court's oral rulings.

### BACKGROUND[1]

On June 25, 2006, Phillip Smith was killed when a vehicle driven by
Defendant Mari Katherine Armstrong hit his recumbent bicycle on State
Route (SR) 28 between Odessa and Harrington, Washington.  At the time of
the accident, Mr. Smith was one of forty cyclists participating in a
cross-country bicycle tour organized and sponsored by Defendant American
Cycling Association (ACA), a non-profit recreational bicycling tour
association.  This ride, beginning in Seattle, Washington and ending in
Washington, D.C., was staffed by four tour members: Ryan Kaplan, Caitlin
Giddings, William Herrmann, and Marshall "Spike" Beleau, each of whom had
experience in similar recreational tours with ACA.

The tour's fourth day began in Odessa.  The weather was clear,
sunny, and warm.  Cyclists began on SR 28, destined for a water stop in
Harrington.  Mr. Smith was wearing an ACA-provided orange caution

---

[1] When considering this motion and creating this factual section,
the Court did not weigh the evidence or assess credibility; instead, the
Court believed the undisputed facts and the opposing party's evidence and
drew all justifiable inferences therefrom in the opposing party's favor.
*See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).  However,
the Court did not accept as true assertions made by the opposing party
if they were flatly contradicted by the record.  *See Scott v. Harris*, 550
U.S. 372, 380 (2007).  Disputed facts are supported by a citation to the
record, while undisputed facts are not.

ORDER ~ 2

triangle and riding side-by-side or "two abreast" with a companion rider, Hilary Capers (Klos), on a flat, straight stretch of SR 28.  The two were followed by a fellow rider, who trailed them by some distance.

Around 10:45 a.m., a tour support van driven by ACA staffer Mr. Herrmann came upon the two cyclists, who he saw to be riding two abreast. As Mr. Herrmann approached, he slowed, activated his four-way flashers to alert motorists he was slowing, and pulled to the left on the roadway. The cyclists went single file.  Although riding two abreast is prohibited or highly discouraged, Mr. Herrmann did not slow to rider speed to remind them to ride single file.  Shortly after Mr. Hermann passed, they resumed riding two abreast.

Several seconds later, Ms. Armstrong's vehicle struck Mr. Smith.  Ms. Armstrong had been heading northbound to Davenport, Washington; her attention had been diverted from the road to her three-year-old child in a rear child safety seat.  Ms. Armstrong admitted fault: braking only after impact, she never saw the cyclists.  Despite checking his mirrors every two to four seconds, Mr. Herrmann never observed Ms. Armstrong's vehicle approaching his slowed van or the cyclists.  Nor did he warn Mr. Smith, Ms. Capers, or Ms. Armstrong of the potential for an impending collision.

Based upon ACA's judgment and experience in sponsoring and administering such recreational tour rides, it did not place a sign on the roadway advising motorists of cyclists on the road or employ an escort van to follow the last rider.  ACA did not, nor was it required to, obtain a permit from the State of Washington to conduct the tour on Washington highways or otherwise provide advance notice of the ride.  ACA

could have, but chose not to, post signs along the route advising community members that an organized ride was in progress. It also could have, but chose not to, email, mail, or otherwise alert local papers, regional governments, Chambers of Commerce, or others that the ride was coming through their area.

On June 22, 2009, Plaintiffs Victor Smith, Phillip Smith's sole surviving son, and Christopher Nedeau, in his capacity as the representative of Phillip Smith's estate, filed this wrongful death action against Ms. Armstrong and ACA. Victor Smith seeks monetary damages for the loss of consortium his father may have provided had he survived.

In their Complaint, Plaintiffs allege that ACA breached its duty to exercise reasonable care to ensure the safety of its tour participants by: 1) not maintaining a vehicle to follow the tour participants to warn approaching drivers of cyclists; 2) directing tour participants onto SR 28 when it knew or should have known of dangerous traffic conditions and/or narrow shoulders; and 3) enhancing the inherent risks of bicycle touring. In March 2010, Plaintiffs' answer to ACA's written interrogatories asserted additional claims that ACA failed to 1) adequately warn motorists sharing the roadway; 2) properly investigate the route used; and 3) secure the necessary permits from the State of Washington. (ECF No. 55, Ex. H, at 9.)

ACA filed the instant motion on November 22, 2010, seeking summary dismissal of all claims against ACA. Yet on November 30, 2010, Plaintiffs again supplemented their Interrogatory 15 answer to argue that ACA was negligent because Mr. Herrmann failed to 1) reinforce ACA's rule

ORDER ~ 4

against riding two abreast, and 2) observe and warn Phillip Smith and Ms. Capers of Ms. Armstrong's approaching car.  *Id*. Ex. I.  Trial is set for March 14, 2011.

## DISCUSSION

### I.   Plaintiffs' Supplemental Interrogatory Answer

ACA objects to Plaintiffs' November 30, 2010 supplemental interrogatory answer as untimely and interjecting new issues into the case.  Under Federal Rule of Civil Procedure 26(e), a party who has responded to an interrogatory must supplement or correct its disclosure or response in a timely manner if the party learns that the disclosure or response is materially incomplete or incorrect.  Here, the parties engaged in discovery after Plaintiffs answered Interrogatory 15; notably, Plaintiffs deposed Mr. Herrmann on August 25, 2010.  The supplemental response focuses on two aspects of Mr. Herrmann's conduct: his failure to reinforce ACA's rule against riding two abreast and to observe and warn the cyclists of Ms. Armstrong's approaching car.

The Court recognizes that a plaintiff may discover facts after responding to interrogatories that shift the lawsuit's focus.  *See* 8B Charles Alan Wright & Arthur Miller, *Federal Practice and Procedure* § 2181 (3d Ed. 1988) (noting that "[i]nterrogatories often must be answered early in the case before a party has completed its investigation and before it has a full understanding of the case").  Here, Plaintiffs' supplementation, albeit three months after Mr. Herrmann's deposition and three weeks after the discovery deadline, does not interject new issues into the case or prejudice ACA.  Rather, it clarifies and enhances Plaintiffs' general position that ACA was negligent as a result of ACA

and its staffers' actions.  Fed. R. Civ. P. 33(b) advisory committee's note (1970) ("Although in exceptional circumstances reliance on an answer may cause such prejudice that the court will hold the answering party bound to its answer, the interrogating party will ordinarily not be entitled to rely on the unchanging character of the answers he receives and cannot base prejudice on such reliance.").  Accordingly, the Court finds Plaintiffs' supplemental Interrogatory 15 answer proper.

## II.  ACA's Motion for Summary Judgment

ACA seeks summary dismissal of all claims against it because Plaintiffs have failed to identify the appropriate standard of care and to establish by expert testimony that ACA violated that standard. Plaintiffs counter that the traditional reasonable-person standard is appropriate, and that triable issues of material fact exist that preclude summary judgment.

### A.   Summary Judgment Standard

Summary judgment is appropriate if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party opposing summary judgment must point to specific facts establishing a genuine issue of material for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  If the nonmoving party fails to make such a showing for any of the elements essential to its case for which it bears the burden of proof, the trial court should grant the summary judgment motion.  *Celotex Corp.*, 477 U.S. at 322.  Sitting in diversity,

the Court applies the substantive law of the forum state.  *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003).

**B.  Negligence**

With the above standard as its guide, the Court analyzes whether Plaintiffs' claims against ACA survive summary judgment.  Plaintiffs claim that ACA was negligent by failing to 1) secure permits from the State of Washington; 2) divert tour participants from dangerous SR 28; 3) adequately warn communities of the cyclists' presence before the race; 4) maintain a vehicle to follow cyclists or post warning signs for motorists; 5) reinforce ACA's rule against riding two abreast; and 6) observe and warn of Ms. Armstrong's approaching car.

"A negligence action has four elements: (1) a duty to the plaintiff; (2) breach of that duty; (3) resulting injury; and (4) proximate cause between the breach and the injury."  *Niece v. Elmview Group Home*, 79 Wn. App. 660, 668 (1995), *aff'd* 131 Wn.2d 39 (1995) (citing *Hutchins v. 1001 Fourth Ave. Assoc.*, 116 Wn.2d 217, 220 (1991)).  "The threshold determination in a negligence action is whether a duty of care is owed by the defendant to the plaintiff."  *Babcock v. Mason Cnty. Fire Dist. No. 6,* 144 Wn.2d 774, 784-85 (2001); *see also Vergeson v. Kitsap Cnty.*, 145 Wn. App. 526, 535 (2008).  This is a question of law.  *Niece*, 79 Wn. App. at 668. Plaintiffs have the burden of establishing the existence of a duty.  *Lake Wash. Sch. Dist. No. 414 v. Schuck's Auto Supply, Inc.*, 26 Wn. App. 618, 621 (1980).  A defendant's duty may be predicated on a violation of a statute or common law negligence principles.  *Bernethy v. Walt Failor's, Inc.*, 97 Wn.2d 929, 932 (1982).

ORDER ~ 7

1    ACA suggests that the standard of care is that of a "professional"

2  recreational cycling tour organizer, which it argues, requires expert

3  testimony to establish.    Expert testimony is usually required to

4  establish the standard of care in professional negligence cases.    *See*

5  *Douglas v. Freeman*, 117 Wn.2d 242, 249 (1991).    This is because a person

6  with specialized knowledge or skill must employ the same amount of

7  knowledge and skill as similar professionals in similar circumstances.

8  *See, e.g., Affiliated FM Ins. Co. v. LTK Consul. Servs.*, Inc., 243 P.3d

9  521, 529 (Nov. 4, 2010) (finding that the reasonable care for an engineer

10  is the degree of care, skill, and learning expected of a reasonably

11  prudent engineer under the same circumstances); *Webb v. Neuroeduc. Inc.,*

12  *P.C.*, 121 Wn. App. 336 (2004) (recognizing the standard of care as the

13  degree of care, skill, and learning expected of a reasonably prudent

14  health care provider).    However, expert testimony is unnecessary where

15  the acts in question are within the common knowledge or experience of lay

16  persons.    See Fed. R. Evid. 702 (authorizing expert testimony to

17  establish standard of care in cases involving scientific, technical, or

18  specialized knowledge); *AAS-DMP Mgmt, L.P. Liquidating Trust v. Acordia*

19  *Nw., Inc.*, 115 Wn. App. 833, 842 (2003) (rejecting broker's claim that

20  because insured failed to present expert testimony he could not prove

21  duty or breach when act in question is within ordinary knowledge of lay

22  person).

23    ACA has failed to identify any authority in which a court has

24  applied professional negligence principles to an entity like ACA.    ACA

25  relies on *Devonshire v. Johnston Group First Advisors*, 300 F. Supp. 2d

26  516 (N.D. Ohio 2003), *reconsideration granted and vacated in part*, 2004

WL 269625, *vacated on reconsideration in part,* 338 F. Supp. 2d 823, to support its argument.  But that case is distinguishable: although the Ohio district court applied the professional negligence standard and required expert testimony to establish whether it was violated, that was a claim for bad investment advice against a *professional* investment advisor.  ACA fails to cite, and the Court is unable to find, any authority applying the professional negligence standard outside the context of investment advising, health care, law, engineering, real estate, accounting, insurance and the like.  These professionals have years of extensive training, holding skill, judgment, and knowledge unique to that profession.

But here, the judgment and skill required by a recreational bicycle tour organization in determining what safety practices are necessary or reasonable is not so complex that it is beyond the common knowledge and experience of jurors.  While the safety of forty cyclists scattered over fifty miles is difficult to quantify, it does not require the exercise of skill, judgment, and knowledge unique to the recreational cycling tour industry.  Neither the tour director, Ryan Kaplan, nor the other ACA staffers had any formal or specialized training in recreational cycling tour safety.  Nor were any of them professional tour operators.  The extent of the training each received was a three-day leadership course with ACA.  (ECF No. 55, Ex. A, at 13-14.)  This lack of extensive, formal training shows that bicycle touring-unlike medicine, law, accounting, or investment advising-is not a "profession" and is therefore not outside the common understanding of the jury. Accordingly, the Court concludes that 1) the traditional reasonable-person test is the

appropriate standard, and 2) expert testimony, although helpful to the jury in understanding facts in issue, is not necessary to define the standard of care or determine whether ACA breached that standard.

First, the Court dispenses with the claims conceded by Plaintiffs. Plaintiffs concede that no genuine issues of material fact exist as to its first two claims: the parties agree that the stretch of SR 28 was an appropriate and safe road for the ride in question and the State of Washington did not require ACA to obtain a permit to conduct the tour on its highways. (ECF No. 70, at 4.)  Thus, summary judgment is granted as to these claims.

Second, no triable issues of fact exist as to whether ACA was negligent when Mr. Herrmann failed to observe and warn the cyclists of Ms. Armstrong's approaching vehicle.  The parties agree that Mr. Herrmann does not recall any vehicles behind him when he passed the cyclists and that he checked his rearview mirrors every two to four seconds.  They also agree that despite checking his mirrors, Mr. Herrmann did not observe a vehicle approaching the cyclists at freeway speeds while he had slowed to pass the cyclists.  Finally, the parties agree that the collision occurred several seconds after Mr. Herrmann passed the cyclists.  Thus, no reasonable juror could find that Mr. Herrmann, while driving a tour van, was negligent for failing to recognize Ms. Armstrong's vehicle was approaching and, while looking through his rear view mirror, failing to warn Phillip Smith that Ms. Armstrong's vehicle was gradually moving toward the fog line within seconds of impact.

Third, a genuine issue of material fact exists as to whether Mr. Herrmann should have reminded Phillip Smith and Ms. Capers not to ride

two abreast.  Plaintiffs' own cycling expert, Mark Horowitz, concluded that riding two abreast is a safe practice under most circumstances.  He also states that "[i]t is unlikely that the act of riding two abreast was unsafe" (ECF No. 53, Ex. 2, at 7.)  He further expressed the opinion "that bicyclist[s] riding next to each other increases their safety by making both cyclists more visible than riding single file." *Id*.  It is even authorized under Washington law.  Yet, ACA had a policy against riding two abreast.  Tour director Ryan Kaplan has stated that "[r]iding two abreast diminishes the safety of a rider by putting them closer in the line of traffic, and it was highly discouraged to avoid riding side-by-side at all costs." (ECF No. 55, Ex. A, at 44.)  Ms. Capers confirmed that the two-abreast rule was reinforced at map meetings by guides. (ECF No. 55, Ex. E, at 37-38.) Despite such caution, cyclists still rode this way.  *Id*.  Thus, the conflicting expert and lay witness testimony regarding the safety of riding two abreast creates a material issue of fact as to whether Mr. Herrmann acted reasonably in failing to remind Phillip Smith and Ms. Capers not to ride two abreast.

Finally, Plaintiffs' remaining negligence claims against ACA are amenable to jury resolution without expert testimony.  Plaintiffs expert is silent as to whether ACA should have provided signage, escort vans, or publicity to local communities in order to warn motorists of the presence of cyclists on the tour.  And while a variety of conditions and factors may have influenced ACA's decision not to provide such safety measures, expert testimony is helpful, but not necessary on that point.  A reasonable lay person could determine that ACA's failure to provide

signage, escort vans, or local notice would be negligent without the aid of expert testimony.

Accordingly, ACA's motion for summary judgment is **GRANTED** (safety of SR 28, permits, warn of Armstrong vehicle) and **DENIED IN PART** (riding two abreast, signage, escort vans, local notice).

**II.  Defendants' Joint Motion to Exclude Richard Shaw, M.D.'s Testimony**

Defendants ACA and Ms. Armstrong jointly move to exclude certain testimony that will be offered at trial by Plaintiffs' expert, forensic psychologist Richard Shaw, M.D.  Dr. Shaw interviewed Victor Smith and four other individuals to form opinions regarding Phillip and Victor's parent-child relationship and the psychological impact Phillip's death has had on Victor.  Defendants seek to exclude this testimony on two grounds: first, because Dr. Shaw's testimony regarding Victor Smith's grief is irrelevant and prejudicial, and second, because his opinions are hearsay, cumulative, lacking in basis, and subject to common knowledge.

**A.  Dr. Shaw's Opinions Regarding Grief**

Plaintiffs concede that Dr. Shaw may not offer testimony about Victor Smith's grief, but argue that Dr. Shaw should be permitted to testify regarding Victor's loss of his father's love, guidance, and companionship.  In the alternative, Plaintiffs ask the Court to conduct a Federal Rule of Evidence 104 hearing to determine its admissibility, rather than wholly excluding it.

The Court finds that any testimony by Dr. Shaw regarding Victor Smith's unresolved grief, bereavement, or any other psychological or psychiatric condition he experienced as a result of Phillip Smith's death is inadmissible.  Washington's wrongful death statutes create a cause of

1  action in the personal representative of the decedent's estate to
2  compensate the decedent's beneficiaries for pecuniary losses suffered as
3  a result of the wrongful death.  *See* RCW 4.20.010; RCW 4.20.0202; *Tait*
4  *v. Wahl*, 97 Wn. App. 765, 768-69, 787 P.2d 127 (1999).  Those pecuniary
5  losses are limited to lost "monetary contributions [and] compensation for
6  the loss of other services such as the 'love, affection, care,
7  companionship, society and consortium' of the deceased . . . ."  *Bowers*
8  *v. Fibreboard Corp.*, 66 Wn. App. 454, 460 (1992).  Because a wrongful-
9  death beneficiary's damages becomes fixed at the time of death, *Stuart*
10  *v. Consol. Food Corps.*, 6 Wn. App. 841 (1972), any post-death changes in
11  the beneficiary's life, including the onset of grief, are not considered
12  in determining damages.  Thus, recovery is unavailable for a
13  beneficiary's grief and bereavement following the loss of a spouse or
14  parent.  *See Pike v. United States*, 652 F.2d 31, 33 (9th Cir. 1981); *Lee*
15  *v. City of Spokane*, 101 Wn. App. 158, 174 (2000).

16      Accordingly, Dr. Shaw shall not testify regarding: 1) hearsay
17  information obtained by Dr. Shaw regarding Phillip and Victor Smith's
18  relationship; 2) the grief, bereavement, and emotional distress
19  experienced by Victor Smith as a result of Phillip Smith's death; 3)
20  Victor Smith's past and present DSM IV diagnoses of alcohol dependence,
21  marijuana abuse, alcohol abuse, depression, and bereavement; 4)
22  unresolved grief causing Victor Smith to abuse alcohol as a coping
23  mechanism; 5) Victor Smith's repressed emotions and expressions of guilt;
24  6) psychological tests administered to Victor Smith suggesting that he
25  has repressed emotions; and 7) proposed psychotherapy, alcohol
26

ORDER ~ 13

1  counseling, and related cost protections resulting from Victor Smith's
2  unresolved grief.

3  **B.    Dr. Shaw's Opinions Regarding Phillip and Victor's Relationship**

4  Defendants argue that Dr. Shaw's opinions regarding the "closeness"
5  of Phillip and Victor Smith's relationship, and specific services Phillip
6  Smith could have provided during Victor Smith's "emerging adulthood"
7  should be excluded because it is hearsay, repetitive, and does not
8  provide any insight into the parent-child relationship than Victor would
9  be able to provide.

10  For the reasons set forth on the record, Dr. Shaw may only testify
11  as to the narrowly-defined, specific services Phillip Smith could have
12  provided during Victor Smith's "emerging adulthood," a specialized
13  concept requiring expert testimony.  He may not, however, testify as to
14  the "closeness" of Victor and Phillip Smith's relationship because this
15  concept does not involve scientific, technical, or specialized knowledge
16  to assist the jury.  Fed. R. Evid. 702.

17  Accordingly, Defendants' motion to exclude Dr. Shaw's testimony is
18  **GRANTED** and **DENIED** ("emerging adulthood") **IN PART.**

19  **III. Motion to Exclude Video Animation Evidence**

20  The Armstrong Defendants move to exclude Plaintiff's video animation
21  evidence because it is unreliable and too prejudicial for the jury.  In
22  the alternative, they ask the Court to 1) limit the amount of times it
23  should be shown to the jury, 2) issue a preliminary limiting instruction
24  and a final instruction, and/or 3) contract with Plaintiffs' expert to
25  construct video animation favorable to them.  Plaintiffs object, arguing

26

1 that the animation came at great expense, but concede that a limiting

2 instruction is appropriate.

3      The Court finds that the video animation evidence is sufficiently

4 reliable to be used as a demonstrative exhibit at trial.  And for the

5 reasons set forth on the record, the Court 1) denies with leave to renew

6 at the pretrial conference the request to limit the jury's viewing of the

7 video animation; 2) grants the request for a limiting instruction, and

8 requires the parties to submit draft instructions on this point; and 3)

9 denies the request to require Plaintiffs to turn over their video-

10 animation work product to the Defendants for their own use.  Accordingly,

11 the Armstrong Defendants' motion to exclude video animation evidence is

12 **DENIED WITH LEAVE TO RENEW** (limit time jury views), **GRANTED IN PART**

13 (limiting instruction), and **DENIED IN PART** (work product).

14 **IV.  Motion to Continue Trial Date**

15      Plaintiffs move to continue the March 14, 2011 trial date because

16 Victor Smith, who is in his final year of college at University of North

17 Carolina at Chapel Hill, will be forced to miss two weeks of school.

18 Defendants oppose the motion because a summer trial would interfere with

19 ACA's cycling season, making witnesses less available during that time

20 period.  Considering Victor Smith's schooling and that the current trial

21 date conflicts with the Court's trial calendar, the Court finds a

22 continuance appropriate.  Accordingly, the March 14, 2011 trial date

23 shall be **STRICKEN.**  At the hearing, the parties were directed to meet and

24 confer and file a notice of available trial dates.  Those notices having

25

26

1    been submitted, the Court **RESETS** trial for **May 14, 2012, in Spokane,**

2    **Washington.**  An amended scheduling order will follow.

3         Accordingly, **IT IS HEREBY ORDERED:**

4         1.   ACA's Motion for Summary Judgment **(ECF No. 46)** is **GRANTED**

5    (safety of SR 28, permits, warn of Armstrong vehicle) and **DENIED IN PART**

6    (riding two abreast, signage, escort vans, local notice).

7         2.   Defendants' Joint Motion to Exclude Testimony of Richard Shaw,

8    M.D. **(ECF No. 57)** is **GRANTED** (grief and bereavement) and **DENIED**

9    ("emerging adulthood") **IN PART.**

10        3.   Defendant Armstrong's Motion to Exclude Video Animation Evidence

11   (ECF No. 61) is **DENIED WITH LEAVE TO RENEW** (limit time jury views),

12   **GRANTED IN PART** (limiting instruction), and **DENIED IN PART** (work

13   product).

14        4.   Plaintiffs' Motion to Continue Trial Date **(ECF No. 102)** is

15   **GRANTED.**

16        **IT IS SO ORDERED.**  The District Court Executive is directed to enter

17   this Order and provide a copy to counsel.

18        **DATED** this 8th day of March 2011.

19

20                        s/Edward F. Shea
                     ─────────────────────────
21                       EDWARD F. SHEA
                   United States District Judge

22

Q:\Civil\2009\189.MSJ.wpd

23

24

25

26

ORDER ~ 16